## MASTER VENDOR CONTRACT

BETWEEN KEVIN GROS OFFSHORE, LLC AND **Quality Diesel Service, Inc**

This Master Vendor contract, effective this **1st** day of **FEB, 2009** by and between Kevin Gros Offshore, LLC, its parent, affiliated, subsidiary companies and vessels (hereinafter "KG") and **Quality Diesel Service, Inc** (hereinafter referred to as "Contractor").

Contractor is in the business of providing **Engine Repair** services, equipment and/or materials (hereinafter "Work").

KG anticipates that it will use the services of Contractor from time to time, and that the use of Contractor's services will require that Contractor bring its personnel and equipment to work aboard KG owned, operated or chartered vessels, or otherwise work on or from land based sites that are owned, leased or utilized by KG or its vessels, including property which is owned or under the control of third parties, including shipyards, machine shops and warehouses or similar facilities.

Contractor represents that it has adequate equipment and/or materials in good working order and/or fully trained personnel capable of efficiently operating such equipment and performing the Work in a safe, proper and workmanlike manner for customer.

In consideration of the mutual promises and covenants contained in this contract, the parties mutually agree as follows:

1. This contract does not obligate KG to order Work and/or equipment and/or materials from Contractor, nor does it obligate Contractor to accept such orders, but it, together with any applicable work order, shall govern and control all work accepted by Contractor and shall define the rights and obligations of KG and Contractor during the term of this agreement. In the event of any conflict between any work order and this Master Vendor contract, this Master Vendor Contract will control. This contract shall control and govern all activities of Contractor in connection with the performance of all Work by Contractor for KG under any work or purchase orders, whether written or oral, given on or after the effective date.

2. This contract shall remain in effect until canceled by either party by giving the other party ten (10) days written notice to that effect at the respective addresses set forth herein; provided, however, that with respect to any work in progress as of the date of cancellation, this contract shall continue in effect until the work is completed. Further, the cancellation of the contract will not affect the validity of the insurance and indemnity provisions set forth below.

3. KG shall pay Contractor for the work and/or equipment and/or materials furnished by Contractor at the rate stipulated in the work orders provided for herein, subject to same being accepted by KG as fully complying with all the terms, conditions, specifications and requirements of this contract (as well as any contract between KG and its customer). KG shall have the right to require that Contractor provide a waiver of lien and shall evidence the satisfaction of payment of its vendors and contractors.



PLAINTIFF'S EXHIBIT NO. 1

4. Contractor will fully support its charges by providing, as required by KG, time and delivery tickets, and any invoices and company records, together with records of any vendors or other suppliers utilized by Contractor.

5. Warranty

A. Contractor warrants that any defects in equipment, design, materials, workmanship, quality, operating characteristics or performance of the Work of Contractor discovered or developed within ___Six___ ( 6 ) months from the date of final acceptance (or such other period as is specified in the relevant work order) of the completed Work shall be promptly and timely repaired or replaced by Contractor at its sole cost and expense.

B. In the event that Contractor does not commence efforts to replace or repair the defective Work within five (5) days of notice, or continue repair efforts diligently, KG may, in its discretion, elect to repair the work itself or hire an outside contractor for same, and charge the reasonable cost of same to Contractor, reserving the rights that exist between the parties. Any part or portion of work that is replaced as a warranty item shall have a minimal additional warranty of six (6) months, or the length of the original warranty, which ever is longer.

6. Independent Contractor

Contractor shall be an independent contractor with respect to the performance of all Work hereunder, and neither Contractor nor anyone employed by Contractor shall be deemed for any purpose to be the employee, agent, servant, or representative of KG in the performance of any work or service or part thereof in any manner dealt with hereunder. KG shall have no direction or control of the Contractor or its employees and agents except with respect to the results to be obtained. The Work shall meet the approval of KG and be subject to the general right of inspection for KG to secure the satisfactory completion thereof. The actual performance and superintendence of all work hereunder shall be by Contractor, but KG or its representatives shall have unlimited access to the operations to determine whether Work is being performed by Contractor in accordance with all provisions of this contract and the work order.

7. Indemnity

It is the intention of the parties that Contractor will remain solely responsible for liabilities which arise out of its work, and for any liability for injury or death claims by its employees or loss of Contractor's property. Therefore, Contractor agrees to protect, defend, indemnify and hold harmless KG and all vessels owned, operated, chartered and/or brokered by KG, its and/or their agents, directors, officers, employees, servants, insurers, any customer and/or third party for whom KG is under contract and/or performing services, ("KG Indemnitees") from and against any claims, demands, lawsuits and expenses, including court costs and attorneys' fees, lawsuits, administrative actions, arbitrations, penalties, fines, liabilities or causes of action of every kind and character, in favor of any person or party, for injury to or illness or death of Contractor, any subcontractors of Contractor (to any level), and employees of Contractor or employees of subcontractors of Contractor (to any level) and for any damage to property of Contractor or subcontractors of Contractor (to any level) and for any employment-related claims by employees of Contractor or employees of subcontractors of Contractor (to any

level) under any labor, civil rights, anti-discrimination and/or employment laws, which injury, illness, death, employment-related claim or damage arises out of, which may be alleged to have arisen out of or is incident to, directly or indirectly, the work performed and/or the services rendered under this contract, and regardless of the cause of such employment-related claim, injury, illness or death, even though caused in whole or in part by a pre-existing defect, the negligence or strict liability of KG Indemnitees or the unseaworthiness or unairworthiness of any vessel or aircraft or any other legal fault of KG Indemnitees. Contractor will fully defend any such claim, demand or suit at its sole cost and expense, even if the same is groundless.

Similarly, KG agrees to protect, defend, indemnify and hold harmless Contractor its and/or their agents, directors, officers, employees, servants, and insurers ("Contractor Indemnitees") from and against any claims, demands, lawsuits and expenses, including court costs and attorneys' fees, lawsuits, administrative actions, arbitrations, penalties, fines, liabilities or causes of action of every kind and character, in favor of any person or party, for injury to or illness or death of any employees of KG and for any damage to property of KG and for any employment-related claims by employees of KG under any labor, civil rights, anti-discrimination and/or employment laws, which injury, illness, death, employment-related claim or damage arises out of, which may be alleged to have arisen out of or is incident to, directly or indirectly, the work performed and/or the services rendered under this contract, and regardless of the cause of such employment-related claim, injury, illness or death, even though caused in whole or in part by a pre-existing defect, the negligence or strict liability of Contractor Indemnitees or the unseaworthiness or unairworthiness of any vessel or aircraft or any other legal fault of Contractor Indemnitees. KG will fully defend any such claim, demand or suit at its sole cost and expense, even if the same is groundless.

8.  Contractor shall report to KG and give timely notice as soon as is practicable of all accidents or occurrences resulting in injury to Contractor's employees or third parties or damage to property of Contractor or third parties, arising out of or during the course of Work for KG by Contractor, and when requested, shall furnish KG with a copy of reports made by Contractor to Contractor's insurer or to others of such accidents and occurrences.

9.  Insurance

   A.  As a separate and distinct obligation, KG and Contractor have agreed to certain allocations of insurance and for the cost of the premium of said insurance to be reflected in the charges agreed to for any particular service provided by Contractor. At any and all times during the terms of this contract, Contractor agrees that it shall obtain and maintain any fact at Contractor's sole expense, with good and solvent insurance companies or insurers, the following policies of insurance of the types and with the minimum amounts as follows:

   1.  Worker's Compensation and Employer's Liability:

      1.1  Limits:

         a.  Statutory Worker's Compensation Insurance in full compliance with the laws of the State

    in which the worker's services may be performed by Contractor hereunder.

  b. United States Longshore and Harbor Worker's Compensation Insurance in full compliance with the United States Longshore and Harbor Worker's Compensation Act, as amended, 1984, and extended by the Outer Continental Shelf Lands Act.

  c. Coverage "B", Employer's Liability Insurance with minimum amounts of $1,000,000 each employee, $1,000,000 each accident, covering injury or death to any employee which may be outside the scope of the Worker's Compensation Statute or the State in which the Work is performed.

1.2 Endorsements:

  a. United States Longshore and Harbor Worker's Compensation Act.

  b. Outer Continental Shelf Lands Act Extension.

  c. Amendment of Coverage "B", Maritime including transportation, wages, maintenance and cure, with limits of $1,000,000 each person, $1,000,000 each accident.

  d. Provision that a claim "in rem" should be treated as a claim against the insured.

  e. Voluntary Compensation Coverage.

  f. Borrowed Servant Endorsement stating that an action brought against KG as a borrowed servant by an employee of Contractor will provide coverage to KG and will be treated as a claim against Contractor, it being understood that neither KG nor its insurers shall be obligated to reimburse Contractor or Contractor's insurers for any benefits paid to such employees.

      g. Occupational Disease Coverage.

2. Comprehensive General Liability Insurance:

   2.1 Limits:

      a. Comprehensive General Liability Insurance with minimum limits of $1,000,000 for injury to or death of any person and $1,000,000 for any accident and with minimum limits of $1,000,000 for property damage, each accident.

   2.2 Endorsements:

      a. If Contractor provides watercraft in connection with its services, then it agrees to provide P&I insurance for such watercraft and/or arrange for the deletion of the watercraft exclusion. If Contractor does not provide watercraft in connection with its services, then it agrees to delete the Non-owned Watercraft Exclusion.

      b. Extension of territorial limit to include Gulf of Mexico.

      c. Products Hazard Coverage.

      d. Completed Operations Hazard Coverage.

      e. Contractual Liability coverage for contracts with KG, its parent, subsidiary, affiliated and related companies, specifically covering the liabilities assumed under this agreement.

      f. Action over Indemnity Buy Back – covering any contractually assumed liability claim which arises from suits brought against third parties by an employee of Contractor.

      g. Waiver of Subrogation Endorsement as provided below.

      h. Additional Insured Endorsement as stated below. Insofar as the operations described herein are governed by the Louisiana Oilfield Anti-Indemnity Statute, it is

        understood and agreed that KG will be charged a direct insurance premium for the additional insured endorsement stated herein from Contractor's insurers. Contractor agrees that it is solely responsible to make arrangements for its insurers to directly charge KG for the additional insured premium prior to performance of any Work that may be governed by Louisiana law or the Louisiana Oilfield Anti-Indemnity Statute.

    i. Provision that a claim "in rem" shall be treated as a claim against the insured.

    j. Pollution Liability.

3. Comprehensive Automobile Liability

   3.1 Limits

      a. Minimums of $1,000,000 for injury or death of any person and $1,000,000 for any one accident and $1,000,000 for property damage.

   3.2 Endorsements

      a. All owned automobiles

      b. All non-owned automobiles

      c. All hired automobiles

   3.3 Comprehensive Single Limit of liability, alternative

      a. In lieu of the Comprehensive General Liability required by paragraph 2, et seq, and the Comprehensive Automobile Liability required by 3, et seq, Contractor may elect to provide Comprehensive Single Limit of liability coverage with $1,000,000 in minimum limits, provided such policy otherwise complies with 2.2 and 3.2.

4. Marine Insurance: If Contractor provides vessels in connection with its services, then Contractor agrees to procure hull and P&I insurance on all vessels including equipment owned, chartered, operated, managed or otherwise used, possessed or controlled by Contractor.

4.1 Limits

a. Hull insurance to the value of the vessel.

b. P&I insurance to the value of the vessel but not less than $1,000,000.

4.2 Endorsements

a. The P&I policy to include crew coverage in an amount not less than $1,000,000.

b. The P&I policy to include cargo liability and pollution liability coverages.

c. "In rem" endorsement, whereby claims "in rem" shall, for the purposes of coverage, be treated as claims against the Contractor.

d. Territorial limits to include the Gulf of Mexico and all other areas of operation agreed to by and between KG and Contractor.

5. Umbrella liability coverage:

a. Contractor agrees to procure umbrella liability coverage of not less than $5,000,000 in excess of the coverages outlined above.

6. All insurance required by this contract shall be carried by a company or companies acceptable to KG. All policies shall be maintained in full force and effect during the terms of any Work performed under the contract, and shall be endorsed to provide they cannot be cancelled, altered or amended without thirty (30) days prior written notice to KG.

All policies required by this agreement shall be endorsed to waive subrogation against KG or any KG Indemnitees and shall name the KG Indemnitees as an additional insured with no obligation for premiums and with deductibles to be solely for Contractor's account. Said policies shall also be endorsed as primary and shall delete any "other insurance" provisions or any "no cover elsewhere" or similar clauses, and any other insurance which is available to KG or KG Indemnitees shall be deemed excess to Contractor's insurance.

10. Governing law: This contract shall be governed by, construed and interpreted in accordance with the Maritime law of the United States. However, if it is judicially determined that general Maritime law is inapplicable, then the parties stipulate and contract that the law of the State of Louisiana shall govern (except to the extent that such application would invalidate, in whole or in part, any indemnity or insurance provision required herein). KG and Contractor agree that any dispute between same shall be resolved in the United States District Court for the Eastern District of Louisiana, or if there is no jurisdiction available to the parties in federal court, then in the Circuit Court for Jefferson Parish, Louisiana.

11. Contractor agrees to comply with all laws, rules and regulations, whether Federal, State or Municipal, which are now or may become applicable to operations covered by it.

Larose, Louisiana, this _1st_ day of _FEBRUARY_, 20_09_.

KEVIN GROS OFFSHORE, LLC

By: _____

Its: ___VICE PRESIDENT___

Post Office Box 1412
Larose, Louisiana 70373

[CONTRACTOR]

BY: _____

ITS: ___General Manager___
[address]

P209



TOD EVERAGE ASSOCIATE
Direct Dial: 504.585.3052    Fax: 504.585.3051
TODEVERAGE@KEANMILLER.COM

January 19, 2012

**By E-mail and U.S. Mail**

John F. Emmett, Esq.
Waits, Emmett & Popp, L.L.C.
1515 Poydras Street, Suite 1950
New Orleans, LA 70112

Rufus C. Harris, Esq.
Harris & Rufty
650 Poydras Street, Suite 2710
New Orleans, LA 70130

> Re: Kevin Gros Marine, Inc., et al. v. Quality Diesel Service, Inc., et al., USDC-EDLA No. 11-2340
> *M/V CAPT. WHITEY GROS*
> Our File No.   :   021919.000000

Dear John and Rufus:

In the review of the documents received from our client in preparation of our responses to written discovery, we discovered a Master Vendor Contract (the "Contract") that we believe addresses several issues in this case. A copy of which is attached hereto.

First, as you can see, the contract was executed and effective February 1, 2009 between Kevin Gros Offshore, LLC, its parent, affiliated, subsidiary companies and vessels and Quality Diesel Service, Inc.

Section 1 of the Contract provides:

> 1. This contract does not obligate KG to order Work and/or equipment and/or materials from Contractor, nor does it obligate Contractor to accept such orders, but it, together with any applicable work order, shall govern and control all work accepted by Contractor and shall define the rights and obligations of KG and Contractor during the term of this agreement. In the event of any conflict between any work order and this Master Vendor contract, this Master Vendor Contract will control. This contract shall control and govern all activities of Contractor in connection with the performance of all Work by Contractor for KG under any work or purchase orders, whether written or oral, given on or after the effective date.



PLAINTIFF'S EXHIBIT NO. 2

T 504.585.3050 | F 504.585.3051
909 Poydras Street 14th Floor | New Orleans, LA 70112
keanmiller.com

KEAN MILLER

John F. Emmett, Esq.
Rufus C. Harris, Esq.
January 19, 2012
Page 2

Therefore, the Contract was effective and governing over the parties and the work performed during the overhaul in June 2010 and through and including the loss on May 7, 2011.

Second, and as you are aware, the applicability of Quality Diesel's express warranty is and will be an issue in this litigation. As our client represented in his letter to Kevin Gros Offshore, LLC, dated May 11, 2011, it is Quality Diesel's position that the overhaul was subject to a 6-month express warranty. In John's letter to Quality Diesel, dated June 15, 2011, he contended that the overhaul was not subject to any express warranties. Additionally, he invited Quality Diesel to provide him with any materials indicating that the overhaul was subject to an express warranty, and further represented that "Houston Casualty has no interest in unnecessarily forcing the parties to incur litigation expenses in the event that you can demonstrate the existence of an express warranty."

While Quality Diesel continues to represent that the independent express warranty attached to its letter of May 11, 2011 (the "Warranty"), which had been given to Kevin Gros's representatives numerous times over the course of business dealings, is applicable and enforceable over the June 2010 overhaul, Quality Diesel now further supports its position with the Contract. A copy of the Warranty is also attached hereto for your convenience. Specifically, Section 5 of the Contract provides an express 6-month warranty for all repair work performed by Quality Diesel for Kevin Gros Offshore, LLC.

5. Warranty

A. Contractor warrants that any defects in equipment, design, materials, workmanship, quality, operating characteristics or performance of the Work of Contractor discovered or developed within ___Six___ ( 6 ) months from the date of final acceptance (or such other period as is specified in the relevant work order) of the completed Work shall be promptly and timely repaired or replaced by Contractor at its sole cost and expense.

B. In the event that Contractor does not commence efforts to replace or repair the defective Work within five (5) days of notice, or continue repair efforts diligently, KG may, in its discretion, elect to repair the work itself or hire an outside contractor for same, and charge the reasonable cost of same to Contractor, reserving the rights that exist between the parties. Any part or portion of work that is replaced as a warranty item shall have a minimal additional warranty of six (6) months, or the length of the original warranty, which ever is longer.

KEAN MILLER

John F. Emmett, Esq.
Rufus C. Harris, Esq.
January 19, 2012
Page 3

This language is consistent with the 6-month field service and part warranty provided by Quality Diesel to all of its customers, including Kevin Gros Offshore, LLC, under the Warranty.

Therefore, given this language, Quality Diesel represents that the work that it performed during the June 2010 overhaul that is the subject of this lawsuit was covered by an express 6-month warranty, which expired on December 4, 2010. Thus, the May 7, 2011 loss that was allegedly caused by the faulty work of Quality Diesel during the June 2010 overhaul was no longer under warranty. Thus, though Quality Diesel continues to specifically deny any defect or error in its work during the June 2010 overhaul, Quality Diesel avers that the expiration of the express warranty precludes Houston Casualty's, Kevin Gros Offshore, LLC's and Kevin Gros Marine, Inc.'s claims for damages associated with the May 7, 2011 loss.

Consequently, Quality Diesel respectfully requests that in accordance with John's representations in his letter dated June 15, 2011, that Houston Casualty, Kevin Gros Offshore, LLC and Kevin Gros Marine, Inc. voluntarily dismiss the above referenced lawsuit.

If you wish to discuss this matter further, please feel free to contact me or Brad Schlotterer. With kindest personal regards, I am

Very truly yours,

Tod J. Everage

TJE

cc: Jason Bourgeois (by email)
Ken Gelpi (by email)
Ronald Kitto (by email)



TOD EVERAGE ASSOCIATE
Direct Dial: 504.585.3052   Fax: 504.585.3051
TODEVERAGE@KEANMILLER.COM

February 1, 2012

**By e-mail and U.S. Mail**

Rufus C. Harris, Esq.
Harris & Rufty
650 Poydras Street, Suite 2710
New Orleans, LA 70130

    Re: Kevin Gros Marine, Inc., et al. v. Quality Diesel Service,
       Inc., et al., USDC-EDLA No. 11-2340
       *M/V CAPT. WHITEY GROS*
       Our File No. : 021919.000000

**PLAINTIFF'S EXHIBIT NO. 3**

Dear Rufus:

  At all times relevant to the referenced lawsuit, any work performed by Quality Diesel Service, Inc. for Kevin Gros Offshore, LLC was performed pursuant to a Master Vendor Contract (hereinafter the "Contract") executed between Kevin Gros Offshore, LLC and Quality Diesel Service, Inc. on February 1, 2009, a copy of which is enclosed for your ready reference.

  Section 7 addresses the indemnity obligations between the parties, which provide as follows:

    7. Indemnity

      It is the intention of the parties that Contractor will remain solely responsible for liabilities which arise out of its work, and for any liability for injury or death claims by its employees or loss of Contractor's property. Therefore, Contractor agrees to protect, defend, indemnify and hold harmless KG and all vessels owned, operated, chartered and/or brokered by KG, its and/or their agents, directors, officers, employees, servants, insurers, any customer and/or third party for whom KG is under contract and/or performing services, ("KG Indemnitees") from and against any claims, demands, lawsuits and expenses, including court costs and attorneys' fees, lawsuits, administrative actions, arbitrations, penalties, fines, liabilities or causes of action of every kind and character, in favor of any person or party, for injury to or illness or death of Contractor, any subcontractors of Contractor (to any level), and employees of Contractor or employees of subcontractors of Contractor (to any level) and for any damage to property of Contractor or subcontractors of Contractor (to any level) and for any employment-related claims by employees of Contractor or employees of subcontractors of Contractor (to any

Rufus C. Harris, Esq.
February 1, 2012
Page 2

level) under any labor, civil rights, anti-discrimination and/or employment laws, which injury, illness, death, employment-related claim or damage arises out of, which may be alleged to have arisen out of or is incident to, directly or indirectly, the work performed and/or the services rendered under this contract, and regardless of the cause of such employment-related claim, injury, illness or death, even though caused in whole or in part by a pre-existing defect, the negligence or strict liability of KG Indemnitees or the unseaworthiness or unairworthiness of any vessel or aircraft or any other legal fault of KG Indemnitees. Contractor will fully defend any such claim, demand or suit at its sole cost and expense, even if the same is groundless.

Similarly, KG agrees to protect, defend, indemnify and hold harmless Contractor its and/or their agents, directors, officers, employees, servants, and insurers ("Contractor Indemnitees") from and against any claims, demands, lawsuits and expenses, including court costs and attorneys' fees, lawsuits, administrative actions, arbitrations, penalties, fines, liabilities or causes of action of every kind and character, in favor of any person or party, for injury to or illness or death of any employees of KG and for any damage to property of KG and for any employment-related claims by employees of KG under any labor, civil rights, anti-discrimination and/or employment laws, which injury, illness, death, employment-related claim or damage arises out of, which may be alleged to have arisen out of or is incident to, directly or indirectly, the work performed and/or the services rendered under this contract, and regardless of the cause of such employment-related claim, injury, illness or death, even though caused in whole or in part by a pre-existing defect, the negligence or strict liability of Contractor Indemnitees or the unseaworthiness or unairworthiness of any vessel or aircraft or any other legal fault of Contractor Indemnitees. KG will fully defend any such claim, demand or suit at its sole cost and expense, even if the same is groundless.

Considering the foregoing, Quality Diesel submits that it is entitled to invoke Section 7 c the Contract and, therefore, hereby make demand upon Kevin Gros Offshore, LLC to protec defend, indemnify and hold Quality Diesel and its insurer harmless in association with th claims of Houston Casualty, Kevin Gros Offshore, LLC and Kevin Gros Marine, Inc. in th referenced lawsuit.

As Quality Diesel would like to avoid incurring any additional unnecessary lega expenses, we would appreciate your prompt attention to this tender.

If you wish to discuss this matter further, please feel free to contact me or Bra Schlotterer. With kindest personal regards, I am

Very truly yours,

Tod J. Everage

cc:   John Emmett (by email)