UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN GROS MARINE, INC.,<br>KEVIN GROS OFFSHORE, LLC and<br>HOUSTON CASUALTY COMPANY | CIVIL ACTION<br><br>NO.: 2:11-CV-02340 |
| versus | JUDGE MARY ANN VIAL<br>LEMMON |
| QUALITY DIESEL SERVICE, INC.<br>and TRAVELERS PROPERTY &<br>CASUALTY INSURANCE<br>COMPANY OF AMERICA | MAG. DANIEL E. KNOWLES, III |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON HOLD HARMLESS PROVISION OF MASTER VENDOR CONTRACT**

Quality Diesel Service, Inc. ("Quality Diesel"), respectfully submits that it is entitled to a summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Quality Diesel avers that the hold harmless provision found in the Master Vendor Contract ("MVC") between Quality Diesel and Kevin Gros Offshore, LLC (hereinafter referred to collectively with Kevin Gros Marine, Inc., as "Kevin Gros") is clear, unambiguous, and leaves no genuine issue of material fact as to the lack of viability of Plaintiffs' claims. Accordingly, for the reasons set forth in the following sections, summary judgment should be granted in favor of Defendants, dismissing all of Plaintiffs' claims as a matter of law, with prejudice.[1]

---

[1] The Plaintiffs in this case are Kevin Gros Marine, Inc., Kevin Gros Offshore, LLC and Houston Casualty Company. Houston Casualty is the insurer of the Kevin Gros entities and is filing this suit as a subrogated underwriter. Accordingly, Houston Casualty steps in the shoes of Kevin Gros and is bound by all hold harmless provisions executed by its insured, waiving its rights against Quality Diesel.

I. **RELEVANT FACTUAL BACKGROUND.**

This action arises out of a failure of the starboard main engine of the M/V CAPTAIN WHITEY GROS on or about May 7, 2011.[2] The instant lawsuit followed, seeking damages from Quality Diesel and its insurer for the resulting property damage and loss of use of the vessel. Quality Diesel has been providing certain engine repair services for Kevin Gros's vessels for more than seven years, beginning sometime in 2004.[3] Over the course of their extensive business dealings, Quality Diesel has performed more than 500 separately scheduled maintenances, repairs, services and/or overhauls to ten vessels owned or operated by Kevin Gros.[4] In fact, despite the current dispute before the Court, Kevin Gros continues to send its vessels to Quality Diesel for repairs.[5]

A. **THE CONTRACTS.**

At the inception of the business relationship between Quality Diesel and Kevin Gros in approximately 2004, Quality Diesel provided Kevin Gros with a copy of its Express Warranty, which remains in effect for all of Quality Diesel's services for Kevin Gros.[6] For the first five years of their working relationship, from 2004 until January 2009, the only contracts between the parties had been the Express Warranty and the individual work orders/invoices documenting each repair.[7] On or before February 1, 2009, Kevin Gros required Quality Diesel to execute a third contract — the Master Vendor Contract ("MVC").[8] The MVC is undisputedly a Kevin

---

[2] *See* Complaint at ¶ VII. (Rec. Doc. No. 1). Defendants note that the date in ¶ VII of the Complaint should read "May 7, 2011."
[3] Affidavit of Jason Bourgeois at ¶ 5, attached hereto as Exhibit "A."
[4] *Id.* at ¶ 6. This total includes the services to the vessel pre-2009 when Kevin Gros operated the vessel on behalf of Hunter Offshore; it was then named the *M/V MAAD HUNTER*.
[5] *Id.* at ¶ 5.
[6] *Id.* at ¶ 7. *See also* Express Warranty, attached hereto as Exhibit "B."
[7] Affidavit of Jason Bourgeois at ¶ 10.
[8] *Id.* at ¶ 13. *See also* MVC, attached hereto as Exhibit "C."

Gros form and the terms were not negotiated by Quality Diesel.[9] The MVC contains no language providing that it was intended to supercede any prior enforceable agreements or warranties between the parties.

For the purposes of this motion, the MVC clearly provides that the parties intend to remain solely responsible for any damages sustained to their own property caused by the other contracting party while providing services under the MVC.

> Similarly, KG agrees to protect, defend, indemnify and hold harmless Contractor [Quality Diesel] ... from and against any claims, demands, lawsuits and expenses, including court costs and attorneys' fees, lawsuits ... liability or causes of action of every kind and character, in favor of any person or party ... for any damage to property of KG ... which may be alleged to have arisen out of or is incident to, directly or indirectly, the work performed and/or the services rendered under this contract ... even though caused in whole or in part by a pre-existing defect, the negligence or strict liability of Contractor ... or any other legal fault of Contractor.[10]

As written, the provision clearly provides that Kevin Gros will hold Quality Diesel harmless for any damage to the property of Kevin Gros which is alleged to have arisen from Quality Diesel's work — even if the cause was Quality Diesel's negligence.[11]

### B. THE WORK AND THE LOSS.

The vessel at issue in this case, the M/V CAPTAIN WHITEY GROS, has been worked on by Quality Diesel more often than any of the other vessels owned by Kevin Gros; over 100 separate service occasions from 2006 up to the date of loss.[12] After many repeated repairs on the main engines of the CAPTAIN WHITEY GROS, Kevin Gros contacted Quality Diesel at some point in the Spring of 2010 about performing an overhaul of both main engines.[13] In order to

---

[9] Affidavit of Jason Bourgeois at ¶ 14.
[10] MVC at ¶ 7 (emphasis added).
[11] For the record, Quality Diesel vehemently denies any and all allegations of negligence on its part with respect to the in-frame overhaul at issue.
[12] Affidavit of Jason Bourgeois at ¶ 6.
[13] *Id.* at ¶ 16.

keep costs down, and given the recently replaced parts of the engines, Kevin Gros did not desire to proceed with a complete overhaul of the engines.[14] Therefore, in line with specific directions and supervision from Kevin Gros, Quality Diesel performed an "in-frame overhaul" of the starboard and port main engine which was completed on or about June 2, 2010.[15]

Kevin Gros alleges that the May 7, 2011 engine failure was attributed to an ejection of the No. 3 connecting rod out of the starboard main engine.[16] More specifically, they allege the cause of the connecting rod failure to be improperly torqued connecting rod bolts. Kevin Gros argues that the "improper torquing" occurred during the June 2010 overhaul performed by Quality Diesel.[17] It should be noted that Quality Diesel denies that any such over-torquing can cause the damages alleged, especially given that a full 11 months elapsed from the overhaul to the failure with no signs of torquing problems.

Kevin Gros and its subrogated insurer, Houston Casualty, filed this lawsuit against Quality Diesel and its insurer seeking to recoup both property and economic damages attributed to the casualty sustained by the M/V CAPTAIN WHITEY GROS on May 7, 2011.[18] Quality Diesel denies all liability and contends that any damage alleged by Plaintiffs was caused solely the fault and negligence of Plaintiffs or other for whom Quality has no responsibility.

However, for the purposes of this Motion for Summary Judgment, Quality Diesel relies solely upon the MVC entered into between Kevin Gros and Quality Diesel. Specifically, Quality Diesel is entitled to the benefit of all defenses and rights available to it pursuant to the MVC, including the provisions of the MVC where Kevin Gros agrees to defend, indemnify and hold Quality Diesel harmless with respect to the claims herein.

---

[14] *Id.* at ¶ 20.
[15] *Id.* at ¶ 22.
[16] *See* Complaint at ¶ VII (Rec. Doc. No. 1).
[17] *See id.* at ¶ VIII.
[18] *See id.*

## II. LAW AND ARGUMENT.

### A. SUMMARY JUDGMENT STANDARD.

Summary Judgment under Federal Rule of Civil Procedure 56 is appropriate when "viewing the evidence in the light most favorable to the non-movant, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[19] Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. "If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial."[20]

The non-movant must demonstrate with "significant probative evidence" that there is an issue of material fact warranting a trial.[21] The non-movant cannot satisfy its burden with "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."[22] "Rule 56(c) mandates the entry of summary judgment against a party who has failed to make an evidentiary showing sufficient to establish an essential element of her case."[23]

### B. THE CLEAR LANGUAGE AND PLAIN MEANING OF THE HOLD HARMLESS PROVISION ELIMINATES ALL GENUINE ISSUES OF MATERIAL FACT THAT KEVIN GROS CONTRACTUALLY WAIVED ITS CLAIMS AGAINST QUALITY DIESEL.

There are no genuine issues of material fact concerning the scope and interpretation of the hold harmless provision of the MVC. The contract clearly provides that Kevin Gros agreed to hold Quality Diesel harmless against any and *all* claims brought by *any* person or *party*, for damage to or loss of property owned by Kevin Gros that arises out the performance of services

---

[19] *Levy v. Phillips and Jordan, Inc.*, 2011 WL 2580592, *2 (E.D. La. June 29, 2011) (Lemmon, J.) (internal quotations omitted); Fed. R. Civ. Pro. 56(c).
[20] *Id.* (citing *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986)).
[21] *Texas Manufactured Hous. Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir. 1996), *cert denied*, 521 U.S. 1112 (1997).
[22] *Levy*, 2011 WL 2580592 at *2 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[23] *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997).

under the Contract. As shown below, this clearly includes Kevin Gros' claims against Quality Diesel.

### 1. SINCE THE "HOLD HARMLESS" LANGUAGE IN THE MVC IS CLEAR AND UNAMBIGUOUS, IT SHOULD BE GIVEN ITS PLAIN MEANING.

The question of interpretation of a contract is an issue of law for the court.[24] Under Federal Maritime Law, when a hold harmless provision is clear and unambiguous, "a court may not look beyond the written language of the document to determine the intent of the parties,"[25] instead, it "should be read as a whole and its words given their plain meaning."[26] A court "should construe [an] indemnity clause to cover all losses which reasonably appear to have been within [the parties'] contemplation.'"[27]

Because the hold harmless agreement is clear and unambiguous, the plain meaning of the provision is determinative.[28] According to BLACK'S LAW DICTIONARY, "hold harmless" means "to absolve (another party) from any responsibility for damage or other liability arising from the transaction."[29] Therefore, the hold harmless provision in the MVC should be read to mean that Kevin Gros absolved Quality Diesel from any liability arising from Quality Diesel's engine repair work performed under the MVC. Any other reading of the provision would lead to an interpretation contrary to its clear and plain meaning.[30]

---

[24] *Amoco Prod. Co. v. Texas Meridian Resources Exploration, Inc.*, 180 F.3d 664, 668 (5th Cir. 1999).
[25] *Corbitt v. Diamond Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981).
[26] *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 2012 WL 246455, *3 (E.D. La. Jan. 26, 2012); *see also, e.g.,* La. Civ. Code art. 2047 ("The words of a contract should be given their generally prevailing meaning.")
[27] *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 956 (5th Cir. 1984) (quoting *Kemp v. Gulf Oil Corp.*, 745 F.2d 921, 929 (5th Cir. 1981)).
[28] *See Deepwater Horizon*, 2012 WL 246455 at *3; *see also Edward E. Gillen v. U.S.*, 825 F.2d 1155, 1156 (7th Cir. 1997) ("Courts will construe words of a document in accordance with their usual, common and ordinary meaning.").
[29] Black's Law Dictionary (9th ed. 2009).
[30] *See Edward E. Gillen*, 825 F.2d at 1156 ("The plain meaning of the language used controls even though the parties may have placed a different construction on it.") (internal quotations omitted).

### 2. THIS DISTRICT HAS RECENTLY RECOGNIZED THAT SIMILAR HOLD HARMLESS PROVISIONS ARE RELEASES WHEN ENFORCED AGAINST CONTRACTING PARTIES FOR THEIR OWN CLAIMS.

Such a reading is also appropriate in light of this District Court's recent opinion in *Deepwater Horizon*, wherein Judge Barbier interpreted similar hold-harmless provisions from two U.S. Fifth Circuit decisions and found them to be releases: *Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, and *Todd Shipyards Corp. v. Turbine Service, Inc.*[31] In the *Houston Exploration* decision, Houston Exploration sued Halliburton for damages associated with a well blowout. Halliburton sought to enforce an indemnity/hold harmless provision in its contract with Houston Exploration, which provided that Houston Exploration agreed to "hold Halliburton harmless" from any and all claims:

> ... to defend, indemnify and hold Halliburton ... harmless from and against any and all liability, claims, costs, expenses, attorney's fees and damages ... resulting from ... [l]oss of well control.[32]

Because the District Court found that Halliburton was grossly negligent, it refused to enforce the hold harmless provision because it was against public policy. However, on appeal, the U.S. Fifth Circuit reversed this decision. In doing so, the court found that Halliburton's actions did not amount to gross negligence. Subsequently, and in reliance on the hold harmless language cited above, the U.S. Fifth Circuit held that Halliburton was entitled to enforce the hold harmless provision against Houston Exploration — thus requiring the claims against Halliburton to be dismissed.

---

[31] *See Deepwater Horizon*, 2012 WL 246455 at *7 (examining *Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 269 F.3d 528 (5th Cir. 2001) and *Todd Shipyards Corp. v. Turbine Service, Inc.*, 674 F.2d 401 (5th Cir. 1982)).
[32] *Houston Exploration*, 269 F.3d at 529 (emphasis added).

In *Todd Shipyard*, the important language from the case that Judge Barbier referenced in the *DEEPWATER HORIZON* decision can be found in Footnote 8, and contains hold harmless language similar to that found in the MVC:

> Seller agrees to carry fire and extended insurance coverage on all such property and to indemnify and <u>save</u> Buyer <u>harmless</u> from any and all judgments, orders, awards, costs, and expenses, including attorneys' fees and also claims on account of <u>damage to property</u> or bodily injury (including death) <u>which may be sustained by Seller</u>, Seller's employees, Buyer, Buyer's employees or third persons, arising out of or in connection with work performed for Buyer on premises occupied or under control of Buyer or Seller.[33]

Since both the *Houston Exploration* and *Todd Shipyards* cases involved claims between the contracting parties (no third parties were involved), Judge Barbier recognized that both of these decisions did not "concern a true indemnity claim;" rather, these situations involved a "contractual 'release' from liability for damage suffered by the other party to the contract."[34] Judge Barbier's rationale is directly applicable to the case at hand.

In the instant litigation, it too does not involve a true indemnity situation because what is being mandated by the contract language is a hold harmless for any property damages sustained by a party to the agreement. The language of the MVC clearly illustrates the parties' intent to be released for such claims:

> KG agrees to protect, defend, indemnify and <u>hold harmless</u> Contractor [Quality Diesel] ... from and against any claims, demands, lawsuits and expenses, including court costs and attorneys' fees, lawsuits ... <u>for any damage to property of KG</u> ...[35]

Accordingly, based on the U.S. Fifth Circuit decisions in *Houston Exploration* and *Todd's Shipyard*, as well as the recent District Court decision in *DEEPWATER HORIZON*, the

---

[33] *Todd's Shipyard*, 674 F.2d at 416, fn 8.
[34] *Deepwater Horizon*, 2012 WL 246455 at *7.
[35] MVC at ¶ 7 (emphasis added). Paragraph 7 also contains a reciprocal provision covering Quality Diesel's damages.

release provision requiring that Kevin Gros (and its insurers) hold QDS harmless for property damages sustained by Kevin Gros should be enforced in accordance with the plain meaning of the terms. As a result, the claims filed in the instant suit by Kevin Gros should be dismissed, with prejudice.

### 3. THE HOLD HARMLESS PROVISION CLEARLY APPLIES TO CLAIMS BROUGHT AGAINST QUALITY DIESEL BY KEVIN GROS.

Although Kevin Gros may argue that the hold harmless provision does not apply to claims brought by Kevin Gros, but was intended rather, to only cover third party claims, this argument is without merit. In *Edward E. Gillen Co. v. U.S.*, the indemnitor made a similar argument — and it was rejected out right.[36] The U.S. Seventh Circuit analyzed the hold harmless provision wherein, just like the MVC, it provided that one party will hold the other party harmless from "all claims" brought by "any person or party."[37] In responding to the indemnitor's argument that the provision did not intend to apply to a contracting party, the Court stated that to read the provision in such a way would require it to insert non-existent limiting language into the contract:

> The Court finds that provision 17(c) is clear, complete and unambiguous on its face. The clause states that the plaintiff agreed to indemnify and hold harmless the defendant against all suits arising from the total or partial negligence of the contractor ... The contractor also states that the indemnity includes any loss without limitation of any kind whatsoever. The provision explicitly applies to "all suits." It is inappropriate for the court to read in a clause, such as "all suits, except those brought by the contractor." The Court cannot add terms to an agreement.[38]

The holding in *Gillen* is directly applicable to this case. Indeed, to read the hold harmless provision to not apply to Kevin Gros' own claims would ignore the plain meaning of the

---

[36] 825 F.2d 1155, 1157 (7th Cir. 1997).
[37] *See id.*
[38] *Id.*

provision and require the inappropriate addition or subtraction of terms not agreed to by the parties. Accordingly, such an argument should be rejected.

### 4. IN THE ALTERNATIVE, IF AN AMBIGUITY EXISTS IN THE MVC, IT WOULD BE CONSTRUED AGAINST THE MVC'S DRAFTER – KEVIN GROS.

Any effort by Kevin Gros to argue a different intent other than the interpretation asserted herein would not create an ambiguity.[39] However, even if an ambiguity is somehow read into the provision, the provision would have to be construed against the drafter of the contract [Kevin Gros].[40] Thus, while Quality Diesel contends that the language – and thus the intention – of the provision is clear, to the extent that an ambiguity is argued, such an argument would either be futile, or at a minimum, merely cause the provision to be read against Kevin Gros.

### 5. THE PLAIN MEANING OF THE HOLD HARMLESS PROVISION IS ENFORCEABLE AND DOES NOT LEAD TO ABSURD CONSEQUENCES.

Finally, the plain meaning of the provision does not lead to absurd consequences, as it was the clear intent of the parties to contractually retain certain reciprocal risks for each party's own property damage. The hold harmless provision compromises no public policies, nor does it absolve Quality Diesel of liability for any intentional tort or gross negligence that would result in damages or liability to Kevin Gros.[41] Moreover, the provision is adequately explicit for Quality Diesel to be held harmless even for its own negligence.[42]

---

[39] *See Deepwater Horizon*, 2012 WL 246455 at *3 (citing *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009) ("Disagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties.")).

[40] *Thomas J. Schoenbaum*, Admiralty & Mar. Law § 5-20 (4th Ed. 2004)(providing that ambiguities in the indemnity clause of an admiralty contract "will be construed strongly against the drafter".).

[41] *See e.g. Deepwater Horizon*, 2012 WL 246455 at *8 ("In other words, the reciprocal nature of these indemnity clauses arguably created an incentive for Transocean to avoid grossly negligent conduct, or at least did not encourage Transocean to act in a grossly negligent manner. These considerations weaken the argument that the indemnity should be invalidated.") (internal citations omitted).

[42] *See Corbitt*, 654 F.2d at 333 ("[I]t is widely held that that a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in unequivocal terms.")

In sum, for any one of the multitude of reasons set forth above, there can be no argument as to any alternative interpretation of the hold harmless provision than that asserted herein by Quality Diesel, which when applied, entitles Defendants to a summary judgment dismissing all claims set forth Kevin Gros.

### III. CONCLUSION.

For the foregoing reasons set forth above, Quality Diesel respectfully requests that summary judgment be entered on behalf of Quality Diesel and against Kevin Gros, dismissing all claims asserted in the Complaint as a matter of law and with prejudice.

Respectfully submitted,

KEAN MILLER LLP

_____
BRADLEY J. SCHLOTTERER (#24211)
SEAN T. McLAUGHLIN (#31870)
TOD J. EVERAGE (#32445)
909 Poydras Street, Suite 1400
New Orleans, LA 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3051
Email: brad.schlotterer@keanmiller.com
Email: sean.mclaughlin@keanmiller.com
Email: tod.everage@keanmiller.com
*Attorneys for Quality Diesel Service, Inc.*
=*and*=
KENNETH J. GELPI, JR., T.A., (#24103)
RONALD J. KITTO (#28638)
A. GORDON GRANT, JR. (#6221)
MONTGOMERY BARNETT, L.L.P.
3300 Energy Centre
1100 Poydras Street,
New Orleans, LA 70163
Telephone: (504) 585-3200
Facsimile (504) 585-7688
E-mail: kgelpi@monbar.com
*Attorneys for St. Paul Fire & Marine Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 6th day of March, 2012, I electronically filed the foregoing with the Clerk of Court by using CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Bradley J. Schlotterer*
BRADLEY J. SCHLOTTERER