UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN GROS MARINE, INC., KEVIN GROS OFFSHORE, LLC and HOUSTON CASUALTY COMPANY | CIVIL ACTION<br><br>NO.: 2:11-CV-02340<br><br>JUDGE MARY ANN VIAL LEMMON |
| versus | MAG. DANIEL E. KNOWLES, III |
| QUALITY DIESEL SERVICE, INC. and TRAVELERS PROPERTY & CASUALTY INSURANCE COMPANY OF AMERICA | |

### AFFIDAVIT OF JASON BOURGEOIS

STATE OF LOUISIANA

PARISH OF ST. MARY

**BEFORE ME**, the undersigned Notary Public, personally came and appeared:

### JASON BOURGEOIS

who, after being duly sworn, did depose and say:

1. That he is a person of the full age of majority, and of sound mind and body, and that this affidavit is based on his own personal knowledge and belief;

2. That he is employed by Quality Diesel Service, Inc. ("Quality Diesel") as its President;

3. That he is familiar with the allegations set forth in *Kevin Gros Marine, Inc., et al. v. Quality Diesel Service, Inc., et al*, USDC – EDLA, No. 11-02340;

4. That he has been personally and directly involved in and knowledgeable of the working relationship between Quality Diesel and Kevin Gros Marine, Inc. and Kevin Gros Offshore, LLC (collectively referred to as "Kevin Gros");

Affidavit of Jason Bourgeois.DOCX



EXHIBIT A

5. That Quality Diesel has been providing certain engine repair services for Kevin Gros' vessels for more than seven years, beginning sometime in 2004, and continuing to this day;

6. That to date, Quality Diesel has performed more than 500 separately scheduled maintenances, repairs, services and/or overhauls to 10 vessels owned or operated by Kevin Gros, including over 100 separate services on the M/V CAPT. WHITEY GROS from 2006 to the date of loss;

7. That at the inception of the business relationship between Quality Diesel and Kevin Gros, Quality Diesel provided Kevin Gros with a copy of its Express Warranty, as it does for all new customers, which remains in effect to date for all of Quality Diesel's services for Kevin Gros;

8. That the Express Warranty was drafted in 2004, has not been modified, and has governed all warranty terms and work between the parties during their business relationship; and that it was Quality Diesel's explicit intention in the Express Warranty to exclude all other express or implied warranties for its work.

9. That after several years, and many jobs later, Quality Diesel began to relax some of the formalities that it required of Kevin Gros (and others) at the start of the business relationship; for example, Quality Diesel no longer required that Kevin Gros sign each quote for every job, nor did Kevin Gros require that Quality Diesel provide them with a formal quote for each job, and that Quality Diesel also discontinued providing Kevin Gros with copies of its Express Warranty;

10. That for the first five years of their working relationship, from 2004 to January 2009, the only contracts between the parties had been said Express Warranty, the individual work orders and invoices documenting each repair;

11. That Quality Diesel and Kevin Gros had many conversations over the course of its business relationship about the warranties;

12. That many times in the past, Kevin Gros has called in, and Quality Diesel has honored its Express Warranty on a particular job, despite not providing a full or complete copy of the Express Warranty to Kevin Gros for that job, and that on other jobs, Kevin Gros would call in and be told that the repair was out of warranty, and no dispute ensued;

13. That on or before February 1, 2009, Kevin Gros required Quality Diesel to execute a Master Vendor Contract ("MVC") in order for Quality Diesel to continue to enjoy Kevin Gros as a customer;

14. That the MVC is a Kevin Gros form and the terms were not negotiated by Quality Diesel;

15. That the MVC did not void or supercede the terms of the 2004 Express Warranty;

16. That after many repeated repairs on the main engines of the M/V CAPTAIN WHITEY GROS, Kevin Gros contacted Quality Diesel at some point in the Spring of 2010 about performing an overhaul of both main engines;

17. That prior to beginning the overhaul, he met with Keith Bergeron, Jamie Troisclair and Keith Guidry of Kevin Gros to discuss the scope of the overhaul;

18. That in that meeting, they discussed the scope of the limited overhaul, namely, what *needed* to be done to the engine, what Kevin Gros *wanted* to be done, what parts should and should not be replaced, and what the approximate cost would be;

19. That given its concerns regarding the cost of the overhaul, Kevin Gros requested that Quality Diesel finance the cost of the work, to which Quality Diesel reluctantly agreed, based on their extensive work history together;

20. That also in order to keep costs down, and given the recently replaced parts of the engines, Kevin Gros did not desire to proceed with a complete overhaul of the engines, therefore the directions from Kevin Gros were to reuse many parts (i.e., any part that had been replaced in the previous 6-9 months);

21. That during the overhaul, Kevin Gros declined certain work proposed by Quality Diesel;

22. That, in line with specific directions and supervision of Kevin Gros, Quality Diesel performed a limited "in-frame overhaul" of the starboard and port main engines, in late May and early June 2010;

23. That Kevin Gros mandated that the overhaul work in question be performed outside of Quality Diesel's own facility, at Bollinger Shipyards, which limited Quality Diesel's access to certain tools and equipment, because they were only available in Quality Diesel's shop;

24. That in further efforts to keep costs down, Kevin Gros provided its Port Captains, Blaine Pellegrin and Keith Bergeron to supervise, assist, direct, and in some cases perform some of the work that Quality Diesel was hired to perform;

25. That, Pellegrin, as an experienced engine mechanic, often provided his own expertise and labor in the engine room, while also supervising and/or contributing to a large part of the overhaul;

26. That the overhaul was completed on or about June 2, 2010 and the CAPT. WHITEY GROS performed successful sea trials that day and on June 4, 2010;

27. That, as is typical with jobs of this size, there were a few instances in the subsequent 6 months after the overhaul where minor additional services were required of Quality Diesel with respect to the main engines, and that in line with the terms of the Express Warranty, Quality Diesel honored its 6-month warranty on those applicable instances;

28. That a minimum of 13 additional repairs were required to the main engines *after* the 6-month warranty expired, and Kevin Gros either paid for or has promised to pay for each of those repairs without attempting to enforce a longer express guarantee or any implied warranties;

29. That despite Plaintiffs' allegations as to causation, between the time of the overhaul to the time of the loss, Kevin Gros never complained about, nor did the starboard main engine ever exhibit any indications or problems that are typically associated with improper torquing of connecting rod bolts;

30. That he has been told on at least one occasion after the loss, by Kevin Gros' Port Captain Keith Bergeron, that Kevin Gros was fully aware of the terms of the Express Warranty and acknowledged that the Express Warranty had expired by the time of the loss with respect to the work performed during the overhaul.

March 6, 2012
Date

JASON BOURGEOIS

SWORN TO AND SUBSCRIBED
BEFORE ME, THIS __12__ DAY OF
MARCH 2012.

Notary Public

Janice Ann Foster
Notary ID # 68039