UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN GROS MARINE, INC., <br> KEVIN GROS OFFSHORE, LLC and <br> HOUSTON CASUALTY COMPANY | CIVIL ACTION <br><br> NO.: 2:11-CV-02340 |
| versus | JUDGE MARY ANN VIAL LEMMON |
| QUALITY DIESEL SERVICE, INC. <br> and TRAVELERS PROPERTY & <br> CASUALTY INSURANCE COMPANY <br> OF AMERICA | MAG. DANIEL E. KNOWLES, III |

## STATEMENT OF UNCONTESTED FACTS

NOW INTO COURT, through undersigned counsel, comes defendant, Quality Diesel Service, Inc. (hereinafter "Quality Diesel"), which submits the following Statement of Uncontested Material Facts in support of its Motion for Summary Judgment as to the applicability of the Express Warranty:

1. Quality Diesel has been providing certain engine repair services for Kevin Gros Offshore, LLC and Kevin Gros Marine, Inc.'s (collectively "Kevin Gros") vessels for more than seven years, beginning sometime in 2004, and continuing to this day;

2. To date, Quality Diesel has performed more than 500 separately scheduled maintenances, repairs, services and/or overhauls to ten vessels owned or operated by Kevin Gros, including over 100 separate services on the M/V CAPT. WHITEY GROS from 2006 to the date of loss;

3. At the inception of the business relationship between Quality Diesel and Kevin Gros, Quality Diesel provided Kevin Gros with a copy of its Express Warranty, as it does for all new customers, which remains in effect to date for all of Quality Diesel's services for Kevin Gros;

4. The Express Warranty was drafted in 2004, has not been modified, and has governed all warranty terms and work between the parties during their business relationship;

5. It was Quality Diesel's explicit intention in the Express Warranty to exclude all other express or implied warranties for its work.

6. After several years, and many jobs later, Quality Diesel began to relax some of the formalities that it required of Kevin Gros (and others) at the start of the business relationship; for example, Quality Diesel no longer required that Kevin Gros sign each quote for every job, nor did Kevin Gros require that Quality Diesel provide them with a formal quote for each job, and that Quality Diesel also discontinued providing Kevin Gros with copies of its Express Warranty;

7. For the first five years of their working relationship, from 2004 to January 2009, the only contracts between the parties had been said Express Warranty, the individual work orders and invoices documenting each repair;

8. Quality Diesel and various Kevin Gros representatives have had many conversations over the course of its business relationship about the warranties;

9. Many times in the past, Kevin Gros has called in, and Quality Diesel has honored its Express Warranty on a particular job, despite not providing a full or complete copy of the Express Warranty to Kevin Gros for that job;

10. On other jobs, Kevin Gros has called in and been told that the repair was out of warranty, and no dispute ensued;

11. On or before February 1, 2009, Kevin Gros required Quality Diesel to execute a Master Vendor Contract ("MVC") in order for Quality Diesel to continue to enjoy Kevin Gros as a customer;

12. The MVC is a Kevin Gros form and the terms were not negotiated by Quality Diesel;

13. The MVC requires Kevin Gros to defend, indemnify and hold Quality Diesel harmless from any claims or lawsuits in favor of any person or party for damage to property of Kevin Gros which may be alleged to have arisen out of or is incident to, directly or indirectly, the work performed and/or the services rendered under the MVC, even though caused by the negligence of Quality Diesel;

14. The MVC did not void or supercede the terms of the 2004 Express Warranty;

15. The MVC and the Express Warranty were in force and effect during the overhaul of the main engines of the M/V CAPT. WHITEY GROS;

16. After many repeated repairs on the main engines of the M/V CAPTAIN WHITEY GROS, Kevin Gros contacted Quality Diesel at some point in the Spring of 2010 about performing an overhaul of both main engines;

17. Prior to beginning the overhaul, Jason Bourgeois of Quality Diesel met with Keith Bergeron, Jamie Troisclair and Keith Guidry of Kevin Gros to discuss the scope of the overhaul;

18. In that meeting, they discussed the scope of the limited overhaul, namely, what *needed* to be done to the engine, what Kevin Gros *wanted* to be done, what parts should and should not be replaced, and what the approximate cost would be;

19. Given its concerns regarding the cost of the overhaul, Kevin Gros requested that Quality Diesel finance the cost of the work, to which Quality Diesel reluctantly agreed, based on their extensive work history together;

20. Also in order to keep costs down, and given the recently replaced parts of the engines, Kevin Gros did not desire to proceed with a complete overhaul of the engines, therefore the directions from Kevin Gros were to reuse many parts (i.e., any part that had been replaced in the previous 6-9 months);

21. During the overhaul, Kevin Gros declined certain work proposed by Quality Diesel;

22. In line with specific directions and supervision of Kevin Gros, Quality Diesel performed a limited "in-frame overhaul" of the starboard and port main engines, in late May and early June 2010;

23. Kevin Gros mandated that the overhaul work in question be performed outside of Quality Diesel's own facility, at Bollinger Shipyards, which limited Quality Diesel's access to certain tools and equipment, because they were only available in Quality Diesel's shop;

24. In further efforts to keep costs down, Kevin Gros provided its Port Captains, Blaine Pellegrin and Keith Bergeron to supervise, assist, direct, and in some cases perform some of the work that Quality Diesel was hired to perform;

25. Blaine Pellegrin, as an experienced engine mechanic, often provided his own expertise and labor in the engine room, while also supervising and/or contributing to a large part of the overhaul;

26. The overhaul was completed on or about June 2, 2010 and the CAPTAIN WHITEY GROS performed successful sea trials that day and on June 4, 2010;

27. As is typical with jobs of this size, and given the history of problems with the CAPTAIN WHITEY GROS, there were a few instances in the subsequent 6 months after the overhaul where minor additional services were required of Quality Diesel with respect to the main engines, and in line with the terms of the Express Warranty, Quality Diesel honored its 6-month warranty on those applicable instances;

28. A minimum of 13 additional repairs were required to the main engines *after* the 6-month warranty expired, and Kevin Gros either paid for or has promised to pay for each of those repairs without attempting to enforce a longer express guarantee or any implied warranties;

29. Despite Plaintiffs' allegations as to causation, between the time of the overhaul to the time of the loss, Kevin Gros never complained about, nor did the starboard main

engine ever exhibit any indications or problems that are typically associated with improper torquing of connecting rod bolts;

30. At all times relevant, Kevin Gros knew the terms of Quality Diesel's Express Warranty applied to its work and services, even when a copy of the Express Warranty was not provided for a particular job;

31. Kevin Gros' Port Captain Keith Bergeron admitted to Jason Bourgeois that Kevin Gros was fully aware of the terms of the Express Warranty and acknowledged that the Express Warranty had expired by the time of the loss with respect to the work performed during the overhaul.

Respectfully submitted,

KEAN MILLER LLP

_____
BRADLEY J. SCHLOTTERER (#24211)
SEAN T. McLAUGHLIN (#31870)
TOD J. EVERAGE (#32445)
909 Poydras Street, Suite 1400
New Orleans, LA 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3051
Email: brad.schlotterer@keanmiller.com
Email: sean.mclaughlin@keanmiller.com
Email: tod.everage@keanmiller.com
ATTORNEYS FOR QUALITY DIESEL SERVICE, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of March, 2012, I electronically filed the foregoing with the Clerk of Court by using CM/ECF system which will send a notice of electronic filing to all counsel of record.

_____
BRADLEY J. SCHLOTTERER