UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEVIN GROS MARINE, INC.,** **KEVIN GROS OFFSHORE, LLC** **AND HOUSTON CASUALTY** **COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 11-2340** |
| **QUALITY DIESEL SERVICE, INC.** **AND TRAVELERS PROPERTY &** **CASUALTY INSURANCE** **COMPANY OF AMERICA** | **SECTION: "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Quality Diesel Service, Inc.'s Motion for Attorneys' Fees (Doc. #98) is **DENIED**.

### BACKGROUND

This matter is before the court on a post-trial motion regarding the entitlement to attorneys' fees filed by defendant, Quality Diesel Service, Inc.  Quality argues that it is entitled to an award of attorneys' fees because it was the prevailing party in the litigation, and the contract between it and plaintiffs, Kevin Gros Marine, Inc. and Kevin Gros Offshore, LLC (collectively "Gros"), provides for such an award.

Quality repairs and refurbishes diesel engines.  Gros has contracted with Quality for repair services numerous times on vessel diesel engines that Gros owns. On February 1, 2009, Gros and Quality entered into a Master Vendor Contract ("MVC"), which applied to all future work that Quality performed for Gros.  The MVC provides, in pertinent part:

7. Indemnity

\* \* \* \*

Similarly, KG agrees to protect, defend, indemnify and hold harmless Contractor [Quality] its and/or their agents, directors, officers, employees, servants, and insurers ("Contractor Indemnitees") from and against any claims, demands, lawsuits and expenses, including court costs and attorneys' fees, lawsuits, administrative actions, arbitrations, penalties, fines, liabilities or causes of action of every kind and character, in favor of any person or party, for injury to or illness or death of any employees of KG and for any damage to property of KG and for any employment-related claims by employees of KG under any labor, civil rights, anti-discrimination and/or employment laws, which injury, illness, death, employment-related claim or damage arises out of, which may be alleged to have arisen out of or is incident to, directly or indirectly, the work performed and/or the services rendered under this contract, and regardless of the cause of such employment-related claim, injury, illness or death, even though caused in whole or in part by a pre-existing defect, the negligence or strict liability of Contractor Indemnitees or the unseaworthiness or unairworthiness of any vessel or aircraft or any other legal fault of Contractor Idemnitees.  KG will fully defend any such claim, demand or suit at its sole cost and expense, even if the same is groundless.

\* \* \* \*

9. Insurance

\* \* \* \*

6.  All insurance required by this contract shall be carried by a company or companies acceptable to KG.  All policies shall be maintained in full force and effect during terms of any Work performed under the contract, and shall be endorsed to provide they cannot be cancelled, altered or amended without thirty (30) days prior written notice to KG.

All policies required by this agreement shall be endorsed to waive subrogation against KG or any KG Indemnitees and shall name the KG Indemnitees as an additional insured with no obligation for

> premiums and with deductibles to be solely for Contractor's [Quality's] account. Said policies shall also be endorsed as primary and shall delete any "other insurance" provisions or any "no cover elsewhere" or similar clauses, and any other insurance which is available to KG or KG Indemnitees shall be deemed excess to Contractor's insurance.

The types of insurance required by the MVC were: (1) workers' compensation and employer's liability; (2) comprehensive general liability; (3) comprehensive automobile liability; (4) marine insurance; and, (5) umbrella liability coverage.

On June 2, 2010, Quality performed repair work on the starboard and port main engines of one of Gros's vessels, the M/V CAPTAIN WHITEY GROS. This work included tightening connecting rod bolts in the engines. Eleven months later, on May 7, 2011, the M/V CAPTAIN WHITEY GROS was in transit when its starboard main engine ejected the number three connecting rod and fragmented piston out of the side of the cylinder block. Simultaneously, there was a fire in the engine room that caused major damage. Gros filed a claim with Houston Casualty Company ("HCC"), its hull insurer. HCC paid the claim under the hull insurance policy's Inchmaree Clause, which covers repairer's negligence, and became subrogated to Gros's rights against Quality and/or Quality's insurer, except for the $50,000 deductible paid by Gros. Gros and HCC, filed this suit against Quality and its insurer, St. Paul Fire and Marine Insurance Company, alleging that Quality breached the implied warranty of workmanlike performance by applying an improper amount of torque to the bolts on the number three connecting rod during the work on the starboard main engine in June 2010.

After a bench trial, the court found that plaintiffs did not meet their burden of proving that it is more likely than not that the bolts on the number three connecting rod on the M/V CAPTAIN WHITEY GROS's starboard main engine were under-torqued when the vessel left the shipyard in

June 2010. Therefore, plaintiffs did not prove that Quality breached the implied warranty of workmanlike performance, and were not entitled to any recovery on their claim.

In its post-trial memorandum, Quality asserted that it was entitled to attorneys' fees under the indemnity provision of the MVC. The court ordered Quality to file a motion regarding its entitlement to attorneys' fees, and the instant motion followed.

## ANALYSIS

**A.    Attorneys' Fees**

Pursuant to the "American Rule," the prevailing party is ordinarily not entitled to collect attorneys' fees from the losing party. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 95 S.Ct. 1612 (1975). "Maritime disputes generally are governed by the 'American Rule.'" Tex. A&M Research Found. v. Magna Transp., Inc., 338 F.3d 394, 405 (5th Cir. 2003) (citing Galveston Cnty. Nav. Dist. v. Hopson Towing Co., 92 F.3d 353, 356 (5th Cir. 1996)). Therefore, "'absent statute or enforceable contract, litigants must pay their own attorneys' fees.'" Id. (quoting Galveston Cnty. Nav. Dist, 92 F.3d at 356).

**B.    Marine Contract Interpretation**

A contract to repair a vessel is a maritime contract. Alcoa S.S. Co. v. Charles Ferran & Co., 383 F.2d 46, 50 (5th Cir. 1967) (citing N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 39 S.Ct. 221 (1919)). Generally, courts apply federal common law to resolve maritime disputes. Albany Ins. Co. v. Anh Thi Kieu, 927 F.2d 882, 886 (5th Cir. 1991). When interpreting a maritime contract, the general rules of contract construction and interpretation apply. Marine Overseas Servs., Inc. v. Crossocean Shipping Co., Inc., 791 F.2d 1227, 1234 (5th Cir. 1986); Ogea v. Loffland Bros. Co., 622 F.2d 186 (5th Cir. 1980). Thus, each provision of a contract must be read


Case 2:11-cv-02340-MVL-DEK Document 108 Filed 07/09/13 Page 5 of 8

in light of others so as to give each the meaning reflected by the contract as a whole. Sw. Eng'g Co. v. Cajun Elec. Power Co-op., Inc., 915 F.2d 972, 980 (5th Cir. 1990). Further, each provision of a contract must be given a meaning that renders it, along with all other provisions, effective rather than meaningless. See Lewis v. Hamilton, 652 So.2d 1327, 1330 (La. 1995). "[I]f a contract is clear and unambiguous, then it must be interpreted as written." Time Ins. Co. v. Estate of White, 447 Fed. Appx. 561, 564 (5th Cir. 2011) (citation omitted). "A court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case." Young v. Merrill Lynch & Co., 658 F.3d 436, 448 (5th Cir. 2011) (citation omitted). "Interpretation of the terms of a contract is a matter of law." Weathersby v. Conoco Oil Co., 752 F.2d 953, 956 (5th Cir. 1984).

The interpretation of a contractual indemnity provision in a maritime contract is generally a question of federal maritime law. Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 332 (5th Cir. 1981); Becker v. Tidewater, Inc., 586 F.3d 358, 369 (5th Cir. 2009). "A maritime contract containing an indemnity agreement, whether governed by federal maritime or Louisiana law, should be read as a whole and its words given their plain meaning unless the provision is ambiguous." Id.

## C.     Indemnity and Attorneys' Fees Under the MVC

Quality argues that it is entitled to attorneys' fees, or at least the amount of its insurance deductible, by the terms of the MVC's indemnity provision. Plaintiffs admit that the MVC's indemnity provision would require Gros to "indefinity Quality for damage to the M/V CAPTAIN WHITEY GROS," but argue that the MVC's insurance provisions require Quality to first exhaust its insurance coverage before seeking indemnity from Gros.


5

Prior to trial, the parties filed cross-motions for summary judgment regarding the applicability of the MVC's indemnity and insurance provisions (Docs. #13, 18).  After examining Marquette Transp. Co. v. La. Mach. Co., 367 F.3d 398 (5th Cir. 2004), Ogea v. Loffland Bros. Co., 622 F.2d 186 (5th Cir. 1980), Tullier v. Halliburton Geophysical Servs., 81 F.3d 522 (5th Cir. 1996), and In re Diamond Servs., 2001 WL 531091 (E.D. La. 5/16/01), aff'd 281 F.3d 1279 (5th Cir. 2001), this court held that Quality must exhaust applicable insurance coverage before seeking indemnity from Gros (Doc. #40).

In Marquette, 367 F.3d 398, the United States Court of Appeals for the Fifth Circuit considered whether insurance coverage must be exhausted prior to the invocation of a contractual indemnity agreement. The court found that Marquette was liable for the fees incurred by defendants in defending the lawsuit under the contractual indemnification clause because the contract did not "dictate that the required insurance would provide primary coverage before indemnification." Marquette, 367 F.3d at 409.

Marquette, 367 F.3d 398, is distinguishable from Ogea, 622 F.2d 186,  Tullier, 81 F.3d 552, and In re Diamond Servs., 2001 WL 531091, where the courts found that "the insurance policies were the 'primary payers' and should be exhausted before any indemnity obligations attached." Marquette, 367 F.3d at 406.  In Ogea, 622 F.2d at 187-88, and Tullier, 81 F.3d at 552-553, the parties entered into contracts that contained indemnification provisions and required the parties to obtain comprehensive general liability insurance policies that named each other as an additional insured. Similarly, in Diamond Servs., 2001 WL 531091, *1, the contract required Diamond to obtain a protection and indemnity ("P & I") insurance policy naming Chet Morrison Contractors as an additional insured, and mandated that such policy be primary. As a result, the court noted in

6

Marquette, 367 F.3d at 407, that "in cases like Ogea, Tullier, and Diamond Services, where the contracts contained 'additional insured' requirements or dictated the primacy of insurance coverage over indemnification obligations, or both," the parties intended that the insurance coverage be exhausted prior to the indemnity provisions being triggered. The contract at issue in Marquette did not require the parties to name each other as additional insureds, nor did it state that the insurance policies would provide primary coverage, thus the insurance did not need to be exhausted prior to seeking indemnification. Id. at 409.

In this case, the MVC: (1) contains an indemnification provision; (2) requires both Quality and Gros to obtain specific insurance policies and name the other party as an additional insured; and, (3) states that the required insurance is primary to all other insurance provisions or similar clauses. Considering these factors, "there is 'no logical way' to reconcile the indemnity and insurance provisions without finding that the parties intended that the insurance limits be exhausted prior to attachment of the indemnity obligations." Id. at 407. Thus, the MVC is the type of contract that requires that the insurance coverage be exhausted before a party seeks indemnification. Id. at 407.

The attorneys' fees language upon which Quality relies is part of the MVC's indemnification clause. As explained above, this court has already determined that Quality is required to exhaust the applicable insurance coverage before seeking indemnification from Gros (Doc. #40). This holding is the "law of the case," and a "court should not reopen issues decided in earlier stages of the same litigation." Agostini v. Felton, 117 S.Ct. 1997, 2017 (1997) (citing Messenger v. Anderson, 32 S.Ct. 739, 740 (1912)). Therefore, Quality must exhaust its applicable insurance coverage before seeking indemnity in the form of attorneys' fees from Gros. Further, Quality may not recover its insurance deductible from Gros under the MVC's indemnification clause, because the MVC's

insurance clause provides that deductibles are "solely for Contractor's [Quality's] account." Thus, Quality's motion for attorneys' fees is DENIED.[1]

## CONCLUSION

**IT IS HEREBY ORDERED** that Quality Diesel Service, Inc.'s Motion for Attorneys' Fees (Doc. #98) is **DENIED**.

New Orleans, Louisiana, this   9th   day of July, 2013.

                                    MARY ANN VIAL LEMMON
                                    UNITED STATES DISTRICT JUDGE

---

[1] St. Paul provided a defense to Quality in this litigation under a reservation of rights.